United States District Court
Southern District of Texas

**ENTERED**

November 10, 2020

David J. Bradley, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| CARLESTER EUGENE WOODROW, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| V. | § | **CIVIL ACTION NO. 4:19-CV-2441** |
| | § | |
| ANDREW SAUL, COMMISSIONER | § | |
| OF THE SOCIAL SECURITY | § | |
| ADMINISTRATION | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM OPINION

Pending before the Court are Plaintiff's Motion for Summary Judgment (Dkt. No. 14) and Defendant's Motion for Summary Judgment (Dkt. No. 17). The District Judge referred the entire case to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Federal Rule of Civil Procedure 72. (Dkt. No. 20.) The parties subsequently consented for the Undersigned Magistrate Judge to conduct all further proceedings, including trial and judgment pursuant to 28 U.S.C. § 636(c). (Dkt. No. 12.) After considering the parties' briefs, the administrative transcript, and the relevant legal authority, Plaintiff's Motion for Summary Judgment is **DENIED** and Defendant's Motion for Summary Judgment is **GRANTED**.

## I. Administrative Proceedings

Plaintiff filed this action for judicial review of the Social Security Administration's ("SSA") final decision on Plaintiff's claim for disability insurance benefits and supplemental security income under Title II of the Social Security Act. Plaintiff claims he became disabled on April 1, 2016 due to disc and nerve damage in his back; high blood pressure; severe depression;

anxiety attacks; seizures; and shortness of breath.[1] Plaintiff previously worked as a stores laborer, a mixer operator, an order puller, and a bucket filler.[2] Plaintiff reported that he was employed from January 2014 to April 2016, and before that from 2001 to 2012.[3]

In August 2017, the SSA found Plaintiff not disabled at the initial level of review.[4] In January 2018, the SSA again found Plaintiff not disabled upon reconsideration.[5] Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on September 24, 2018.[6] On October 29, 2018, the ALJ issued a decision finding Plaintiff had not been disabled from April 1, 2016 through the decision date.[7] On April 29, 2019, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, transforming the ALJ's decision into the final decision of the Commissioner.[8] On July 5, 2019, Plaintiff timely sought judicial review of the decision by this Court.[9]

## II. <u>Five-Step Analysis and Standard of Review</u>

An applicant for social security benefits qualifies as "under a disability" if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(a)(1)(E), (d)(1). To make this determination, the SSA utilizes a sequential five-step analysis. *See Schofield v. Saul*, 950 F.3d 315, 317 (5th Cir. 2020); *see also* 20 C.F.R. § 404.1520(a)(4). The analysis stops at any step

---

[1] *See* Dkt. No. 9-7 at 14.
[2] *See id.* at 15; Dkt. No. 9-3 at 87.
[3] *See* Dkt. No. 9-7 at 15.
[4] *See* Dkt. No. 9-3 at 20; Dkt. No. 9-4 at 18; *id.* at 34.
[5] *See* Dkt. No. 9-3 at 21; Dkt. No. 9-4 at 50; *id.* at 66.
[6] *See* Dkt. No. 9-3 at 56-96.
[7] *See id.* at 35.
[8] *See id.* at 1-6.
[9] *See* Dkt. No. 1.

that produces a finding that the applicant is or is not disabled. *See* 20 C.F.R. § 404.1520(a)(4).

"At step one, the ALJ considers the applicant's work activity, if any." *Schofield*, 950 F.3d at 317 (internal quotation marks omitted) (quoting 20 C.F.R. § 404.1520(a)(4)(i)). "A person performing substantial gainful activity is not disabled" regardless of his medical condition, age, education, or work experience. *Id.* (internal quotation marks omitted) (quoting 20 C.F.R. § 404.1520(b)); *see also* 20 C.F.R. § 404.1520(b).

"At step two, the ALJ considers the medical severity of the applicant's impairment(s)." *Schofield*, at 317-18 (internal quotation and alteration marks omitted) (quoting 20 C.F.R. § 404.1520(a)(4)(ii)). A person who does not have a severe impairment is not disabled. *Id.* (internal quotation marks omitted) (quoting 20 C.F.R. § 404.1520(c)). An impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (emphasis omitted) (quoting *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000)).

"At step three, the ALJ considers whether the [applicant's] impairment meets or equals an impairment listed in Appendix 1 of the regulations [("Listings")]." *Schofield*, 950 F.3d at 318 (quoting 20 C.F.R. § 404.1520(a)(4)(iii)). An applicant whose condition meets or equals all of the criteria of the identified Listing will be found disabled without consideration of his age, education, or work experience. *See* 20 C.F.R. § 404.1520(d); 20 C.F.R. Pt. 404, Subpt. P, App. 1.

Before reaching step four, the ALJ must determine the applicant's residual functional capacity ("RFC"), which is defined as "the most [an applicant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). The RFC is based on an assessment of all of the relevant evidence in the case record. *Id.* At step four, the ALJ considers the RFC assessment and the

applicant's past relevant work ("PRW") to determine whether the applicant is capable of performing the work he performed in the past. 20 C.F.R. § 404.1520(a)(4)(iv); *see also Schofield*, 950 F.3d at 318. If capable of performing past work, he is not disabled. *See Schofield*, 950 F.3d at 318. (citing 20 C.F.R. § 404.1520(f)).

"At step five, the ALJ considers the applicant's [RFC] and age, education, and work experience to see if the applicant can make an adjustment to other work." *Id.* (internal quotation and alteration marks omitted) (quoting 20 C.F.R. § 404.1520(a)(4)(v)). If the applicant could adjust to other work, he is not disabled. *See id.* (citing 20 C.F.R. § 404.1520(g)).

Pursuant to 42 U.S.C. 405(g), the Court has the authority to review the Commissioner's final decision denying disability benefits. The review is limited to: (1) "whether substantial evidence supports the decision" and (2) "whether the correct legal standards were employed." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018).

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla.

*Biestek v. Berryhill*, 587 U.S. __, 139 S. Ct. 1148, 1154 (2019) (internal quotations marks, alterations, and citations omitted). The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive," and this Court must affirm the final decision. 42 U.S.C. § 405(g). However, "if no credible evidentiary choices or medical findings support the decision[,]" the Court should overturn it. *Schofield*, 950 F.3d at 321.

### III. <u>ALJ Hearing</u>

Plaintiff and a vocational expert testified at the hearing, and Plaintiff was represented by

an attorney.[10] The ALJ heard testimony from Plaintiff regarding his symptoms, medical history, and employment history.[11] Plaintiff's wife also testified regarding Plaintiff's symptoms.[12]

Plaintiff testified that due to back pain, he cannot bend, maneuver, or lift, and that his employer would not permit him to continue working under these conditions.[13] He was placed on short-term disability from November 2015 to March 2016.[14] After he returned to work, he was in a meeting discussing accommodations for his restrictions. Plaintiff stated that during the meeting, he stood up, felt a "shock go[] down my back and . . . down my leg" and "fell . . . under the table right in front of everybody."[15] After that, his employer asked him to resign.[16]

Plaintiff has also had surgery on his left arm to repair a torn bicep tendon.[17] In 1995, the fingertip of Plaintiff's left index finger was amputated; however, Plaintiff acknowledged that he had learned to adapt and use this finger.[18] Plaintiff stated that his wife has to help him with personal grooming, such as bathing and dressing. Plaintiff stated that he can sit or stand for fifteen to twenty minutes before needing to rest. Plaintiff walks with a cane, although it is not prescribed.[19] Plaintiff stated that his typical day involves having breakfast, watching television, and lying down due to pain, but that he sometimes volunteers at a local food pantry.[20]

The vocational expert testified that Plaintiff had previously worked as a stores laborer,

---

[10] *See* Dkt. No. 9-3 at 21.
[11] *See id.* at 28-29.
[12] *See id.* at 29.
[13] *See id.* at 28.
[14] *See id.*
[15] *See id.* at 70; *id.* at 28.
[16] *See id.* at 28.
[17] *See id.* at 29.
[18] *See id.*
[19] *See id.*
[20] *See id.*

mixer operator, order puller, and barrel filler at exertional levels ranging from light to heavy.[21] During the hearing, the ALJ posed a series of hypothetical inquiries to the vocational expert.[22] Plaintiff's counsel was also permitted to question the vocational expert.[23]

## IV. <u>Analysis</u>

On review of the ALJ's decision and Plaintiff's specific challenges to the decision, the Court finds that the Commissioner's final decision is supported by substantial evidence and followed correct legal standards, as explained below.

### A. <u>ALJ's Decision</u>

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 1, 2016, the alleged onset date.[24] This finding is correct.

At step two, the ALJ found that Plaintiff has the following severe impairments: spine disorders, hypertension, possible seizures, breathing problems, vision problems, upper left extremity repair surgery, obesity, depression, bipolar disorder, and anxiety disorder.[25] The ALJ found that these impairments significantly limit Plaintiff's ability to perform basic work activities.[26] The ALJ also noted Plaintiff's complaints of having "blackouts."[27] However, the ALJ noted that "treatment records for [Plaintiff's] other impairments consistently show that he has normal respiratory, cardiovascular, and neurological examinations," and that Plaintiff has not been hospitalized for blackouts.[28] Thus, the ALJ found Plaintiff's blackouts do not satisfy the criteria to

---

[21] *See id.* at 35.
[22] *See* Dkt. 9-3 at 86-92.
[23] *See id.* at 92-96.
[24] *See id.* at 23.
[25] *See id.* at 23-24.
[26] *See id.* at 24.
[27] *See id.*
[28] *See id.*

be considered severe.[29] These findings are consistent with the medical record as a whole and are supported by substantial evidence.

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or equals the requirements of any Listing.[30] The ALJ specifically addressed several Listings corresponding with the impairments she had determined to be severe. These include the criteria for a spine disorder under section 1.04; hypertension under section 4.00H; seizures under section 11.02; and a breaching problem under section 3.00.[31] In addition, the ALJ considered the criteria for a presumptive disability for visual disorders under section 2.00 and whether Plaintiff's upper left extremity repair surgery meets the criteria under 1.02B for major dysfunction of a joint.[32] The ALJ concluded that Plaintiff's obesity does not by itself or in combination with his other impairments functionally equal a Listing because (1) it does not result in an inability to ambulate effectively, as defined in section 1.00B(2)(b); and (2) Plaintiff does not have multiple impairments involving the cardiovascular and/or pulmonary systems exacerbated by obesity, as addressed in SSR 02-1p.[33] The ALJ also found that Plaintiff's mental impairments do not meet or medically equal the criteria of Listings 12.04 and 12.06.[34] The ALJ's determination that Plaintiff does not meet or equal a Listing is supported by substantial evidence.

In determining Plaintiff's RFC, the ALJ considered Plaintiff's subjective statements and found them corroborated by reports from Plaintiff's aunt.[35] The ALJ noted that treatment records show Plaintiff had a history of back pain since 1997, after he was injured playing football in

---

[29] *See id.*
[30] *See id.* at 24-27.
[31] *See id.* at 24-25.
[32] *See id.* at 25.
[33] *See id.* at 25-26.
[34] *See id.* at 25.
[35] *See id.* at 28.

college.[36] However, the ALJ found Plaintiff's pain improved with medication and rest, and that surgery was never advised.[37] While x-ray examinations showed severe spinal disc degenerative changes with grade I retrolisthesis and mild degenerative changes in the hips, no fracture, dislocation, or other acute bony abnormality was identified.[38] While Plaintiff's bilateral knee x-ray study showed degenerative changes, no significant tibiofemoral joint space narrowing was observed in either knee.[39]

The ALJ found that "[d]espite all [Plaintiff's] allegations, physical examinations consistently revealed he had regular heart rate and rhythm with no murmurs or enlargement observed. . . . No symptoms of seizures or shortness of breath were observed. His lungs and chest were clear."[40] After Plaintiff's surgery to repair his left bicep tendon in 2018, his initial post-operative examinations showed the surgical implant and tunnel were in perfect position; the treating surgeon stated Plaintiff was doing "well" and that his "motion [was] very good."[41] Following a subsequent appointment, the orthopedic surgeon noted Plaintiff was "doing great. Motion and strength [were] very good, and [there was] no need to return."[42] Plaintiff reported that he had been going to the gym and lifting weights.[43] While he still had some pain and weakness, he was comfortable lifting approximately twenty-five to thirty pounds.[44]

The ALJ concluded "[a]fter careful consideration of the evidence" that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged

---

[36] *See id.*
[37] *See id.*
[38] *See id.*
[39] *See id.*
[40] *See id.* at 31.
[41] *See id.*
[42] *See id.*
[43] *See id.* at 32.
[44] *See id.* at 31-32.

symptoms";[45] however, Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."[46] After "careful consideration of the entire record," including Plaintiff's treatment records, records from consultative examinations, and other evidence, including the statements of Plaintiff and Plaintiff's wife, the ALJ found that

> [Plaintiff] has the [RFC] to perform light work as defined in 20 C.F.R. sec. 404.1567(b) and sec. 416.967(b): i.e., he can lift and carry twenty pounds occasionally and ten pounds frequently, sit for six hours out of an eight-hour day, and stand and walk for six hours out of an eight-hour day. He can never climb ladders, ropes, or scaffolds. [Plaintiff] can occasionally climb ramps and stairs. He can occasionally balance, stoop, kneel, crouch, and crawl. Taking into consideration that [Plaintiff] is left-hand dominant, he can frequently reach overhead, in front, and laterally with his left upper extremity. He must avoid unprotected heights and hazardous machinery. He must avoid concentrated exposure to dust, fumes, gases, odors, other pollutants, and poor ventilation. He must avoid jobs that require driving. He must avoid uneven, rough, or vibrating surfaces. The work must be unskilled with occasional changes to work settings and only occasional work-relate decision making. [Plaintiff] must be allowed to wear corrective lenses, such as glasses. He must avoid working outdoors, in warehouses, and extreme heat and cold.[47]

The ALJ found that Plaintiff's RFC limits him "to a range of less than light exertion, and this is a reflection of the most that can be sustained on a regular and continuing basis."[48] The ALJ's RFC assessment is supported by substantial evidence.

At step four, the ALJ concluded Plaintiff is unable to perform his PRW.[49] The ALJ noted the vocational expert's testimony that Plaintiff's PRW "is performed at a light to heavy exertional level, although [Plaintiff] reported that he performed it at a medium to heavy exertional level."[50]

---

[45] *See id.* at 29.
[46] *See id.*
[47] *Id.* at 27.
[48] *See id.* at 35.
[49] *See id.*
[50] *Id.*

Although Plaintiff's PRW as a mixer operator is generally performed at a light exertional level, the ALJ noted Plaintiff's RFC includes environmental limitations that preclude him from performing such work.[51] The ALJ's conclusion at step four is supported by substantial evidence.

At step five, the ALJ considered the testimony of a vocational expert and concluded that "in considering [Plaintiff's] age, education, work experience, and [RFC], [Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy."[52] These jobs include mail clerk, office helper, and small products assembler.[53] As such, the ALJ found that Plaintiff has not been under a disability at any time from April 1, 2016 to the date of the ALJ's October 29, 2018 decision.[54] The ALJ's conclusion at step five is supported by substantial evidence.

## B. Plaintiff's Arguments

Plaintiff requests judicial review of the ALJ's decision to deny disability benefits, alleging one error: that the ALJ failed to properly weigh the medical source statements. Specifically, Plaintiff contends that "the overall evidence by examining physicians supports a finding that Plaintiff cannot perform the walking and standing required of light work." (Dkt. No. 14 at 7.) Plaintiff disputes the ALJ's determination that Plaintiff can perform the standing and walking required for light work—*i.e.*, to stand and walk for six hours out of an eight-hour day.[55]

The RFC is "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) (quoting SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996)). An applicant's RFC

---

[51] *See id.*
[52] *Id.* at 36.
[53] *See id.* at 35-36.
[54] *See id.* at 36.
[55] *See id.* at 26-34.

includes all medically determinable impairments, including those that are not severe. 20 C.F.R. § 404.1545(a)(2). The RFC determination is an issue reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(2).

The RFC assessment is based on all of the relevant medical and nonmedical evidence in the record. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1). The task of weighing the evidence lies with the ALJ. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001). The ALJ must evaluate every medical opinion in the record and decide what weight to give each. *See* 20 C.F.R. § 404.1527(c). The ALJ's decision "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations)." SSR 96-8p, 1996 WL 374184, at 1. However, the ALJ need not "articulate a separate and explicit finding that a claimant can maintain a job on a sustained basis." *Castillo v. Barnhart*, 151 F. App'x 334, 335-36 (5th Cir. 2005). If the ALJ relied on inaccurate medical expert testimony and the claimant was prejudiced by the ALJ's reliance on such testimony, the error may warrant reversal of the ALJ's decision. *Cf. Carey v. Apfel*, 230 F.3d 131, 143 (5th Cir. 2000) (concluding claimant "was not prejudiced by any inconsistency between the medical expert's testimony and the medical records.").

Plaintiff contends the ALJ improperly weighed certain portions of the record in finding that Plaintiff has the RFC to perform the standing and walking required of light work. First, Plaintiff notes the opinion of consulting physician Tarik Madni, M.D., that Plaintiff has "moderate limitations with standing and walking due to back pain" and had a "slow gait."[56] However, as the ALJ explained in her decision, Dr. Madni stated that Plaintiff's gait was both "slow" and "steady," and further noted that Plaintiff did not use an assistive device and that his "muscle strength was

---

[56] *See* Dkt. No. 9-8 at 32-35.

5/5 throughout in both upper and lower extremities."[57] The ALJ also noted that according to Dr. Madni, Plaintiff's "[t]andem walking was normal," and that "Dr. Madni noted tenderness in the thoracic and lumbosacral spine with restricted range of motion in the cervical, thoracic and lumbar spine[; h]owever, there was no weakness or sensory loss in the body."[58]

The ALJ considered and discussed numerous aspects of Dr. Madni's opinion in her decision, including the observations Plaintiff cites, assigning "some weight" to his opinion.[59] Notably, Dr. Madni's opinion also states that Plaintiff "does not need an assistive device with regards to short and long distances and uneven terrain."[60] Despite this observation, the ALJ found that Plaintiff must avoid uneven, rough, or vibrating surfaces.[61] Thus, the ALJ's decision reflects a sufficient consideration of Dr. Madni's opinion.

Next, Plaintiff points to Dr. Harris's November 2016 observation that Plaintiff walked with a "shuffling gait" and used a cane.[62] However, the ALJ also noted in her decision that Plaintiff had no prescription for a cane and that he did not use a cane when he saw Dr. Madni in July 2017.[63] Moreover, the ALJ devoted three paragraphs of her decision to a discussion of Dr. Harris's observations.[64] As the ALJ noted, Dr. Harris reported Plaintiff was properly dressed and groomed, "reported minimal assistance with daily activities," "was able to tend to his personal needs," and had no difficulties grocery shopping.[65] Finally, as a consulting psychologist, Dr. Harris's observations about Plaintiff's physical condition are not controlling. *See Whittmann v. Unum Life*

---

[57] *See* Dkt. No. 9-3 at 30.

[58] *Id.*

[59] *See id.*

[60] *See* Dkt. No. 9-8 at 35.

[61] Dkt. No. 9-3 at 27.

[62] *See* Dkt. No. 9-8 at 17.

[63] *See* Dkt. No. 9-3 at 30.

[64] *See id.* at 32-33.

[65] *See id.* at 33.

*Ins. Co.*, 2019 WL 763509, at *18 (E.D. La. Feb. 21, 2019) (psychologist not qualified to opine about a physical condition) (citing *Wildman v. Astrue*, 596 F.3d 959, 967 (8th Cir. 2010)). Accordingly, the ALJ's consideration of Dr. Harris's report was sufficient.

Finally, Plaintiff notes the opinion of Stanley Zimmerman, M.D. that Plaintiff's "ability to sit, stand, move about, and lift objects is somewhat limited due to his complaint of pain."[66] Dr. Zimmerman also documented Plaintiff's "complain[t] of low back pain which radiates into the left leg."[67] Upon physical examination of Plaintiff, Dr. Zimmerman observed that Plaintiff "does demonstrate tenderness in the lumbosacral joints and lumbar muscles which have a mild spasm[,]" but that Plaintiff "tends to over[]react to the slightest touch in his back."[68] He also found Plaintiff's "[e]xtremities . . . unremarkable."[69] Moreover, Dr. Zimmerman was a consulting examiner, not a treating physician.[70] Thus, the ALJ's decision reflects that she adequately weighed Dr. Zimmerman's report.

Plaintiff also faults the ALJ's analysis of the opinions of treating physicians Barry Martin, M.D. and Kenneth Jurist, M.D. The ALJ addressed the opinions of Dr. Martin and Dr. Jurist in a single paragraph, following a detailed discussion of Plaintiff's treatment records, subjective statements. The ALJ assigned great weight to both statements, noting that both physicians "established an ongoing treating relationship with the claimant" and that "their statements are consistent with the evidence" discussed earlier in the ALJ's decision.[71]

First, the ALJ noted that in August 2015, Dr. Martin excused Plaintiff from work for three

---

[66] *See* Dkt. No. 9-8 at 9.
[67] *Id.* at 8.
[68] *Id.*
[69] *See id.*
[70] *See id.* at 29.
[71] *Id.* at 33-34.

days after Plaintiff complained of back, hip, and knee pain.[72] Plaintiff contends the ALJ erred in considering this statement—apparently to support the inference that Plaintiff was unable to work only for a short period of time—because Dr. Martin's August 2015 note was merely a "'check-off' form" and therefore not properly considered as a medical source statement. Plaintiff also argues that Dr. Martin's August 2015 note is irrelevant, because it is dated months prior to Plaintiff's alleged disability onset date, and that to the extent Dr. Martin's August 2015 note is considered, then all similar "check-off" forms signed by Dr. Martin should be given equal weight. Plaintiff asserts that "Dr. Martin's 'check-off' forms, when considered in their entirety, indicate that Plaintiff's impairments were requiring him to miss too much work to adequately sustain employment." (Dkt. No. 14 at 6.) Plaintiff contends that but for this error, the ALJ likely would have found Plaintiff is limited in his ability to walk and stand, or is otherwise unable to sustain employment, to such an extent that he is limited to sedentary, rather than light work.

Defendant acknowledges that Dr. Martin's August 2015 note is outside the relevant time period for Plaintiff's RFC determination, conceding that Plaintiff located "a small weakness in the ALJ's evidence evaluation when the ALJ gave weight to one of Dr. Martin's 2015 notes." (Dkt. No. 17 at 8.) However, Defendant argues this error was harmless and did not affect the outcome of the ALJ's disability determination. The Court agrees with Defendant. The ALJ considered Dr. Martin's note in the context of Plaintiff's entire record, which included a wide range of other reports and evidence. Thus, the Court finds that any error in the weight the ALJ placed on Dr. Martin's August 2015 note was not prejudicial in light of ample other evidence the ALJ cited in support of her findings.

Regarding Dr. Jurist's opinion, the ALJ noted that following Plaintiff's bicep tendon repair

---

[72] *See id.* at 33.

surgery in 2018, Dr. Jurist stated that Plaintiff "should be lifting approximately thirty pounds."[73] Plaintiff suggests the ALJ failed to consider that Dr. Jurist also stated Plaintiff had decreased strength of 4/5 on flexation and supination. However, Dr. Jurist's July 2018 examination notes also state that Plaintiff had no pain or weakness other than in the surgical area, Plaintiff's range of motion and strength were "very good," and Plaintiff reported working out in the gym and comfortably lifting twenty-five to thirty pounds.[74]

In summary, the ALJ detailed, over more than seven pages, substantial evidence that Plaintiff could satisfy the demands of a reduced range of light work. The ALJ's narrative provided a detailed discussion of Plaintiff's subjective statements, numerous treatment records, records from consultative examinations, and opinions from non-examining state agency medical consultants. In addition, the ALJ noted that Plaintiff's "obesity does not affect his ability to ambulate effectively, as defined in Listing 1.00B2b, and there is no evidence to show that [Plaintiff's] obesity precludes work activities altogether."[75] The ALJ also found that Plaintiff's "respiratory system and cardiovascular system are not unduly impaired."[76] Thus, the ALJ's decision reflects her consideration of other evidence consistent with her findings that Plaintiff has the RFC to perform light work.

"[T]aking into consideration [Plaintiff's] other physical impairments and giving him great deference," the ALJ found Plaintiff limited to the equivalent of light exertional work.[77] The ALJ also tailored Plaintiff's RFC to specific conditions to accommodate his impairments. For example, she found Plaintiff "can never climb ladders, ropes, or scaffolds . . . must avoid concentrated

---

[73] *See* Dkt. No. 9-3 at 33.
[74] *See* Dkt. No. 9-9 at 18-25.
[75] *See* Dkt. No. 9-3 at 32.
[76] *Id.*
[77] *See id.*

exposure to dust, fumes, gases, odors, other pollutants, and poor ventilation[, . . . and] must avoid working outdoors, in warehouses, and extreme heat and cold."[78] Additionally, in Plaintiff's favor, the ALJ assigned "little weight" to the opinions of state agency consultants Jeanine Kwun, M.D., and Roberta Herman, M.D., that Plaintiff can sustain the equivalent of medium exertion.[79] The ALJ noted that "[e]vidence received at the hearing level shows that the claimant is more limited" than Drs. Kwun and Herman found.[80]

Finally, Plaintiff contends that the ALJ ignored record evidence establishing that Plaintiff's impairments require him to miss too much work for him to sustain employment. Specifically, Plaintiff notes Dr. Martin's records "when considered in their entirety" indicate Plaintiff would be required to miss more than one day per week of work, which would not allow Plaintiff to sustain employment. (Dkt. No. 14 at 6.) However, as discussed *supra*, Dr. Martin's treatment notes largely fall outside the relevant time period of the RFC determination and were made in connection with Plaintiff's previous work, which the ALJ found he is no longer able to perform with his current RFC. Thus, these records do not change the conclusion that the ALJ's decision is supported by substantial evidence.

In summary, the ALJ's detailed consideration of these physicians' opinions was sufficient. The Court's role is not to re-weigh the evidence, *see Chambliss*, 269 F.3d at 523, or to substitute its judgment for that of the Commissioner, *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994). As such, the ALJ's findings are conclusive, and her decision must be affirmed.

## V.  Conclusion

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Dkt. No. 14) is

---

[78] *Id.* at 27.
[79] *See id.* at 33.
[80] *See id.*

**DENIED**, and Defendant's Motion for Summary Judgment (Dkt. No. 17) is **GRANTED**.

Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

　　　　**SIGNED** in Houston, Texas on November 10, 2020.

_____
Sam S. Sheldon
United States Magistrate Judge

17/17